2022 IL App (2d) 210112-U
No. 2-21-0112
Order filed March 22, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CF-1094 |
| | ) | |
| ROMAN BRISENO-GUZMAN, | ) | Honorable |
| | ) | Liam C. Brennan and |
| | ) | Ann Celine O. Walsh, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Although, on the second remand for compliance with Rule 604(d), defense counsel did nothing but adopt former counsel's insubstantial motion challenging defendant's sentence as excessive, a third remand for Rule 604(d) compliance was unnecessary. The excessiveness claim would have no practical chance of success on remand even with additional development, and defendant did not identify any additional sentencing challenges that counsel might have raised.

¶ 2   Defendant, Roman Briseno-Guzman, entered an open plea of guilty to aggravated driving with a blood-alcohol concentration (BAC) of more than 0.08 (DUI) (625 ILCS 5/11-501(a)(1), (d)(1)(C) (West 2018)) and was sentenced to five years' imprisonment. The trial court denied his

motion to reconsider his sentence. On appeal, we vacated the denial of the motion and remanded the cause for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). After yet another appeal and remand, the trial court denied his motion to reconsider sentence. Defendant appeals, arguing that a third remand is necessary. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       The State filed a five-count indictment against defendant. All the charges were based on the same criminal conduct. Count II, to which defendant pleaded guilty, alleged that, on or about May 5, 2019, he drove a motor vehicle while the alcohol concentration in his blood (BAC) was 0.08 or more and that he was involved in a motor vehicle accident that resulted in great bodily harm, *i.e.*, mesenteric injuries and a devitalized ileum, to Shaun Harris. Count II was punishable by probation or 1 to 12 years' imprisonment (see *id.* § 11-501(d)(2)(F)) with no more than 15% credit for time served (see 730 ILCS 5/3-6-3(a) (West 2018)).

¶ 5       On October 23, 2019, the parties announced that defendant would enter an open plea of guilty to count II, with the remaining charges being dismissed. The trial court admonished defendant of the charge and the possible sentences, including that the sentence, "whatever it would be, would be served at 85 percent." Defendant stated that he wanted to plead guilty.

¶ 6       The State then provided the following factual basis for the plea. On May 5, 2019, at approximately 9:30 p.m., defendant was driving south in a northbound lane of Route 83 and collided head-on with a vehicle driven by Harris. Witnesses who pulled defendant from his vehicle described him as having an odor of alcohol. Later, he told police that he believed that he was on Interstate 294 when he fell asleep, and he awoke when he was struck by the other vehicle. He stated that, on the previous day, he visited a friend, Ramberto Manzano, in Round Lake. There, he drank 10 to 12 beers, then slept overnight. Defendant said that, on May 5, he felt shaky and

hung over, but he drove away with his friend at approximately 7 p.m. Two members of the medical staff at Loyola Medical Hospital would testify that Harris was treated between May 5 and May 13, 2019. He required multiple surgeries. Staff members who treated defendant would testify that a blood draw revealed a serum alcohol result of 0.257, which converts to a BAC of over 0.08.

¶ 7 The trial court accepted defendant's guilty plea. The presentencing investigation report (PSIR) stated in part as follows. Defendant was 33 years old. He was a Mexican citizen and entered the United States legally in either 2009 or 2010. He was present in the United States illegally because his work visa expired in November 2016. Defendant told the probation officer that he stayed in the country because he could work and help his family pay medical bills incurred when his nephew was hit by a car. Defendant had worked as a marble installer from September 2016 through May 3, 2019, and reportedly as a dishwasher in 2018 and 2019. Before May 5, 2019, he had been earning enough to pay his monthly expenses and send money to his family in Mexico.

¶ 8 Defendant told the probation officer that he believed that he slept two or three hours before he drove away from Manzano's house. He could not remember how many beers he had drunk the previous evening. He expressed regret for his actions because he had hurt his lifelong friend, but he "seemed to have limited awareness of the harm he caused Mr. Harris."

¶ 9 Defendant's sole prior conviction was a 2017 misdemeanor, transporting alcoholic liquor for a minor. He received court supervision, which was revoked in 2018.

¶ 10 On December 2, 2019, the trial court held a sentencing hearing. In aggravation, Jeff Godfrey, a Du Page County sheriff's detective, testified on direct examination as follows. On May 5, 2019, at about 9:30 p.m., he was dispatched to northbound Route 83. Medical personnel had arrived, and three individuals who were placed on the raised median were later transported to hospitals. Harris told Godfrey that he had been driving in the northbound lane when he suddenly

saw a car driving head-on towards him; Harris braced himself for the unavoidable impact. Several days later, Harris said that the next thing he remembered was waking up in a hospital bed. At the scene, Godfrey learned that the other car had been driven by defendant and that Manzano had been his passenger. A witness later testified that he saw defendant's vehicle turn onto Route 83 and cross over into the northbound lanes while driving south, making no effort to avoid the oncoming traffic and soon colliding with another vehicle.

¶ 11    Godfrey testified that paramedics said that they smelled a distinct odor of alcohol on defendant's breath and that his speech was slurred. He told them that he had drunk four beers. At the hospital, a draw of defendant's blood revealed a blood serum of 0.257, which was equivalent to a BAC of 0.217. Defendant also tested positive for cocaine metabolites.

¶ 12    Godfrey testified that he interviewed defendant the day after the accident. Defendant said that, on the evening of May 4, 2019, he and his friend watched television, and he drank 10 to 12 beers. Defendant slept a few hours. The next day, at about 7 p.m., he drove away. Defendant said that at this time, he felt tired, hungover, and shaky, but he denied having used illegal drugs. At the time of the collision, he did not know in which direction his car was facing.

¶ 13    Defendant's attorney. Robert Gifford, did not cross-examine Godfrey.

¶ 14    Harris read his victim impact statement. He noted that he had undergone two surgeries, had had much of his intestine removed, and was limited in what and when he could eat.

¶ 15    Gifford put on no evidence in mitigation.

¶ 16    In argument, the State noted that, when defendant decided to take a long drive home from his friend's house, his BAC was nearly three times the legal limit and he had cocaine in his system. His driver's license had been suspended. Harris was severely injured in the collision. Moreover, the PSIR reported that defendant was unreliable about his substance use and tended to minimize

his consumption of alcohol. The State contended that defendant had been similarly unreliable with the police. He denied having used cocaine even though metabolites were found in his system. He told the detective that he had stopped drinking more than nine hours before the collision, which was incredible given his extremely high BAC at the time. In jail, defendant participated in faith-based counseling but had done nothing to address his alcohol and drug use. Defendant's attitude toward his alcohol and drug abuse showed that he was likely to reoffend. Finally, he had entered the United States legally but had remained past the legal deadline. The State urged a prison term of "not less than four years."

¶ 17    Gifford argued first that the PSIR showed that defendant, whose prior record included a sole misdemeanor, had "[f]or the most part," lived a law-abiding life in the United States. Further, he had been working multiple jobs for much of the time, and he overstayed his work visa only so that he could pursue employment. He appeared to be financially sound. Gifford recommended a sentence of one year of prison.

¶ 18    The trial court stated as follows. Defendant had a "negligible" criminal history. However, he could easily have afforded to call a ride-share service instead of driving when he was "not just under the influence of alcohol, but two-and-a-half times the legal limit and with cocaine metabolites in his system." Also, a substantial sentence could deter others. The court sentenced defendant to five years in prison.

¶ 19    On December 3, 2019, Gifford filed a motion to reconsider defendant's sentence. The contentions of error, in full, read:

> "1. The sentence, in this case, is required to be served at 85%.
>
> 2. The sentence imposed on Defendant is excessive.

[3]. The court gave excessive consideration and weight to the aggravating factors in 730 ILCS 5/5-5-3.2.

4. The Court failed to recognize and fairly apply the rule of lenity and construction of the sentence factors in favor of the Defendant."

¶ 20    On December 9, 2019, the trial court heard the motion. Gifford stated that he included paragraph 1 because "the court may have overlooked that the sentence is to be served at 85 percent." The court responded, "[W]hen the defendant pled guilty, I admonished him as to the 85 percent and I was fully cognizant of that when I did impose the sentence." Gifford conceded the point and briefly asserted that the court had improperly weighed the aggravating and mitigating factors. He noted that defendant had a "very minimal criminal history."

¶ 21    The State stood on its arguments from the sentencing hearing.

¶ 22    The court noted that it had considered all of the pertinent sentencing factors in imposing sentence and it denied defendant's motion to reconsider the sentence.

¶ 23    On appeal, we vacated the order denying defendant's postjudgment motion, based on Gifford's failure to follow Rule 604(d)'s certification requirement. We remanded for (1) the filing of a valid Rule 604(d) certificate; (2) the opportunity to file a new postjudgment motion, should counsel conclude that a new motion was necessary; and (3) a new motion hearing. *People v. Briseno-Guzman*, No. 2-19-1080 (March 25, 2020) (unpublished minute order).

¶ 24    On remand, Jennifer Sroka was appointed to represent defendant and the case was reassigned to Judge Ann Celine O. Walsh. On July 6, 2020, Sroka filed a certificate of compliance with Rule 604(d). On July 6, 2020, Sroka appeared in court and stated that defendant did not wish to withdraw his plea but only to challenge his sentence. On that day, without any hearing on a motion to reconsider sentence, Sroka filed a notice of appeal. On October 8, 2020, we granted

defendant's motion to withdraw the appeal, and we again remanded the cause "so that the trial court may comply with this court's mandate in [the previous appeal], including a new motion hearing (and a ruling on the motion)." *People v. Briseno-Guzman*, No. 2-20-0423 (Oct. 8, 2020) (unpublished minute order).

¶ 25   On the second remand, Sroka stood on Gifford's motion to reconsider the sentence. She filed a Rule 604(d) certificate, the body of which read as follows:

"1. I have consulted with the Defendant via telephone to ascertain the Defendant's claim of error in the entry of the plea of guilty and in the sentence;

2. I have consulted with the Defendant regarding his plea of guilty—he does not wish to withdraw his plea of guilty, only to contest his sentence;

3. I have examined the trial court file and the report of proceedings of the plea of guilty and the sentencing; and

4. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 26   On March 4, 2021, the trial court held a hearing on the motion to reconsider. Sroka stated defendant had told her that he did not wish to withdraw his plea but only to contest his sentence. Sroka adopted Gifford's arguments from the original sentencing hearing, his motion to reconsider sentence, and the hearing on the motion. She then argued briefly that defendant's sentence should be reduced. The State tersely argued that the record did not bear out defendant's arguments.

¶ 27   Judge Walsh stated that she had not presided over the plea hearing, sentencing, or the hearing on the motion to reconsider sentence. She continued:

"I've reviewed all the transcripts that were referenced as well as [the PSIR]. *** So just for purposes of the record I've read the transcripts from October 23rd of 2019, December

9th of 2019, December 2nd of 2019 *** and *** I've had an opportunity to review the [PSIR] ***. And with that comes the fact that the Court reviewed the sentencing parameters. I also reviewed what was presented in aggravation and mitigation, the arguments of counsel, the *** the Victim Impact Statement and *** Judge Brennan's ruling.

Based on everything that's been presented before the Court I am denying the Defendant's motion to reconsider the five[-]year sentence."

¶ 28    Defendant appealed.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, defendant contends that (1) despite her certificate of compliance with Rule 604(d), Sroka's performance shows that she did not fulfill her responsibilities to defendant; and (2) in part for this reason, the hearing on the motion to reconsider sentence was essentially an empty ritual. Both contentions raise questions of law that we review *de novo*. See *People v. Johnson*, 2019 IL 122956, ¶ 22. We consider them in turn.

¶ 31    Defendant contends first that, although Sroka filed a facially valid certificate of compliance with Rule 604(d), the record refutes her averments in part. He notes that we may consult the record to determine whether she actually fulfilled her obligations under the rule. See *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8. Defendant argues that Gifford's motion to reconsider sentence did not adequately raise any claim of error and Sroka merely stood on it instead of amending it. He argues further that, because nothing from the original proceedings showed that Gifford fulfilled his obligations under Rule 604(d), we may not presume that, by standing on the arguments that Gifford had raised at the original hearing, Sroka fulfilled her obligations either.

¶ 32    Gifford's motion was minimally sufficient to raise only one serious claim of error: that the sentence was excessive. Of the four contentions, the first was based on a misperception, which Gifford later conceded; the second and third raised the excessiveness issue in bare-bones form, and the fourth made no sense legally. At the hearing, Gifford made only a minimal effort to argue that the sentence was excessive. Sroka's decision to stand on the slight base afforded by Gifford gives color to defendant's contention that she did not amend the original motion as needed or argue in support of it to the degree to which she was obligated.

¶ 33    Nonetheless, even assuming these shortcomings to be genuine, we cannot say that they merit another remand. Because this is an appeal from a second remand, Sroka's failure to comply with Rule 604(d) does not automatically require a third remand and new proceedings. See *People v. Shirley*, 181 Ill. 2d 359, 369-70 (1998). Instead, there must be "[a] reason why this court should remand the cause for a third hearing on defendant's claim that his sentence [was] excessive." *Id.* at 370. Under the particular facts of this case, that reason is not present. No benefit to defendant would accrue from even the most scrupulous adherence to Rule 604(d).

¶ 34    On appeal here, defendant does not raise any ground for a motion to reconsider sentence other than excessiveness. He does not contend that Sroka could have raised any other issues, such as a mistake of law or the use of an improper factor in sentencing. (Although defendant faults Sroka for calling no witnesses at the hearing on the motion, motions to reconsider sentence do not routinely include the introduction of new evidence. More important, defendant does not suggest what new evidence Sroka could have introduced or how it might have affected the court's decision.)

¶ 35    The excessiveness argument had no realistic chance of prevailing even with more thorough presentation. After considering all of the pertinent factors in aggravation and mitigation, Judge

Brennan imposed a sentence of five years' imprisonment, four years more than the minimum but seven years less than the maximum. Defendant contends that the five-year sentence was "a year more than even the State recommended at the original sentencing hearing." That is not accurate. The State recommended a sentence of "*not less than* four years" in prison. (Emphasis added.) That does not translate into recommending only four years, as defendant's assertion implies. Thus, defendant's sentence was no more than what the State recommended.

¶ 36    Sroka raised only the excessiveness claim. Defendant does no more on appeal. Moreover, the facts on which defendant relies are, in substance, no different from those cited by Sroka—and firmly rejected by both trial judges. Defendant now relies on his slight prior record and his employment history. However minimally, Sroka also argued that defendant's slight criminal record and his employment history militated against the five-year sentence. And, however minimally, she (and Gifford before her) raised these grounds for reducing defendant's sentence. The court considered them seriously and rejected them. The facts of record that relate to sentencing have never been complicated or seriously in dispute. There is no reason to entertain a serious belief that remanding the cause again, based on Sroka's performance, would make a substantive difference. Therefore, we reject defendants first ground for reversal.

¶ 37    We turn to defendant's second ground for reversal. He argues that the hearing on Sroka's motion was so perfunctory as to require a third remand. Defendant relies on our statement that "a defendant seeking to withdraw his plea is entitled to a hearing that is *meaningful*, but only in the very limited sense that it is not a mere charade performed for the purpose of reinstating an appeal." (Emphasis in original.) *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 14. Here, we cannot say that the hearing on remand was a mere charade. Again, we note that the facts of record that were pertinent to whether the sentence was excessive were neither extensive nor seriously in

dispute. Although Sroka's presentation of the excessiveness argument was terse, to say the least, the trial court's consideration of the issue was far from perfunctory. The judge read the record, including the transcripts of the sentencing hearing and the original motion to reconsider sentence and the PSIR. The judge also considered the pertinent factors in aggravation and mitigation and the range of available sentences. See *id.* (trial court's review of entire file militated against conclusion that "hearing was *** purely formal exercise"); *People v. Whitmore*, 313 Ill. App. 3d 117, 119 (2000) (similar). Thus, the narrowly tailored rule that defendant invokes does not apply here. We reject defendant's second ground for reversal.

¶ 38                                   III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 40    Affirmed.